## JAMES P. BUSH & others *vs.* SAMUEL BALDREY.

Gold dollars of United States coin, if applied towards the payment of a debt, without any special contract as to the rate at which they are to be taken, cannot be treated as having any greater value than any other currency which is a legal tender for the payment of debts; and English sovereigns, if applied towards the payment of a debt, are to be computed according to the real par of exchange, that is, having reference to the gold coin of the United States.

CONTRACT. The declaration contained one count upon an account annexed, in which the items upon the debit side were all for money ; and one count for money had and received.

It was agreed in the superior court that the report of H. W. Paine, to whom the case had been referred as auditor, should be taken as a statement of facts, as follows : On the 25th of September 1860 the defendant agreed with the plaintiffs to take command of their ship Wild Hunter, for the sum of one hun-dred and fifty dollars a month. She made voyages from New York to Liverpool, Chili, San Francisco, Port Louis, and finally returned to New York on the 23d of August 1864, when the de-fendant ceased to command her. In September 1862 the defend-ant collected freight in Liverpool in sterling, and took to his own

use £261 7*s.* 2*d.*  In March 1863 he collected freight in San Fran-
cisco in gold, and took to his own use $580.29 in gold.  In No-
vember 1863 he collected freight in Port Louis in gold, and took
to his own use $1235.40 in gold.  And in May 1864 he collected
freight in London in sterling, and took to his own use £244 17*s.*
1*d.*  These were the only items in dispute between the parties,
it being agreed that if the defendant was chargeable with the
money which he took to his use in Liverpool and London at the
rate of $4.84 to the pound, (which was about the average of the
real exchange value of the pound sterling, " on a specie basis,")
and with the number of dollars which he took to his use in San
Francisco and Port Louis, and no more, he would be entitled to
recover as set-off $173.81, with interest; but if he was charge-
able with those sums at the current rates of exchange based on
the paper currency of the United States, the plaintiffs would be
entitled to recover $2140.29, with interest.

Judgment was rendered for the defendant for the balance
claimed by him ; and the plaintiffs appealed to this court.

*C. A. Welch,* for the plaintiffs.  The pound sterling should be
reckoned at its real value at the time the defendant received it,
in the only currency now known here, namely, United States
notes.  There is no reason for assuming the custom-house value,
which was fixed before the war, for a special purpose only.  The
sovereign, which is equivalent to the pound sterling, is not now
a legal tender for any particular amount.  There is no propriety
in estimating its value in gold dollars.  Foreign money should
be calculated at its fair market value.  It is a commodity, and
its market value may be reckoned.  *Scott* v. *Bevan,* 2 B. & Ad.
78.  *Lee* v. *Wilcocks,* 5 S. & R. 48.  That value should be based
upon the same currency which determines the value of every
other article.

*T. K. Lothrop & R. R. Bishop,* for the defendant, were not
called upon.

HOAR J.  At the time when the defendant made his contract
with the plaintiffs, the only legal currency of the United States
was gold and silver coin.  This has not ceased to be the legal
currency of the country at any time since.  It is evident from

these considerations that, if he has retained the amount due him by his contract in the gold coin of the country, he has received no more than he was equitably as well as legally entitled to have. The laws authorizing the issue of United States treasury notes, and making them a legal tender in payment of debts, have not made the gold coins of the denomination of one or more dollars a legal tender for any more than the dollars they represent. Because a treasury note, which bears in popular estimation a less value than a gold coin of the same denomination, will pay a debt, the gold coin will not overpay it.

If one man has received to another's use a certain sum of money, in the currency recognized by law as the currency of the country, judgment can be rendered against him only for that sum ; and if he has been paid a certain number of dollars in the legal currency of the country, it is only a payment of that number of dollars, although some other kind of currency than that in which he was paid might have been more cheaply obtained. The coined dollar of gold, fixed by law as of the value of a dollar, cannot be treated by any judicial tribunal, in any computation or judgment, as having another or different value. *Wood* v. *Bullens*, 6 Allen, 516.

The defendant's credits were therefore clearly right, so far as he retained the sums due to him in the coined money of the United States.

The payments retained in English sovereigns, or gold coins reckoned in pounds sterling, are not governed by a rule so simple in its application. But in respect to them the rule is clearly settled. When a debt is due or a payment made in the currency of a foreign country, its amount is to be computed in the currency of the United States according to the real par of exchange ; that is, by ascertaining what sum the standard coin of one will produce of equal weight and fineness in the currency of the other. *Commonwealth* v. *Haupt*, 10 Allen, 38. *Hussey* v. *Farlow*, 9 Allen, 263. This is an absolute standard, not liable to vary with the causes which produce fluctuations of exchange ; and, in the absence of any special contract, appears to be the most practical and just. In *Hussey* v. *Farlow*, the rule

was applied to payments made under a charter party in pounds sterling; and we think there is nothing in principle to distinguish that case from the case at bar.

The defendant will have judgment for the amount found due upon his set-off according to the auditor's report.